IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 17-05035-01-CR-SW-RK |
| JOHNNY T. TAYLOR, | ) ) ) | |
| Defendant. | ) | |

## **REPORT & RECOMMENDATION**

Before the Court is Defendant Johnny T. Taylor's Motion to Suppress. (Doc. 72.) This action has been referred to the undersigned for the purpose of submitting a report on any pretrial motions for suppression of evidence. As follows, it is **RECOMMENDED** that the Motion to Suppress be **DENIED**.

**I.     Background**

Defendant has been charged by a two-count Indictment as follows: Count 1, conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846; and, Count 2, use of a communication facility in causing or facilitating the commission of a felony in violation of 21 U.S.C. §§ 843(b) and (d)(1). (Doc. 1.)

The undersigned conducted an evidentiary hearing on the motion on July 30, 2019. (Doc. 86.) The Government was represented by Assistant U.S. Attorney Abe McGull, while Defendant appeared in person with his attorney, Josh Roberts. Travis Spencer appeared as a witness for the Government.

## II. Findings of Fact[1]

Travis Spencer is a narcotics detective for the Newton County Sheriff's Office and is also attached to the Ozarks Drug Enforcement Team. On May 6, 2017, Det. Spencer received a tip from a DEA investigator about a suspicious package sent from Phoenix, Arizona via UPS and addressed to a Sherry Conant at 1624 Shawnee in Seneca, Newton County, Missouri. On May 7, 2017, the package arrived at a UPS facility in Joplin, Missouri. Det. Spencer arranged for a detection dog to be brought to the facility, where it ran around five packages, including the package at issue. The dog alerted on the package at issue three different times. Det. Spencer obtained a search warrant for the package, opened it and found that it contained approximately a pound of methamphetamine. Det. Spencer then obtained a search warrant for 1624 Shawnee, to be executed after a controlled delivery of the package by a postal inspector.

On May 8, 2017, the postal inspector delivered the package at 1624 Shawnee to the resident ("J.M."), who accepted it and said the package belonged to his sister. Det. Spencer and other officers then converged on 1624 Shawnee to execute the search warrant. After locating the package in a bedroom, Det. Spencer came out to the porch, where J.M. was being detained, and read him his *Miranda* rights. Upon questioning, J.M. stated that on May 6, his sister, Jennifer Conant, and her boyfriend, whom J.M. referred to as "D," were at J.M.'s residence. J.M. described D as a large black male driving a white van. During this visit, Conant and D told J.M. they were going to have a package delivered to Conant at the residence. They also told J.M. he would receive a couple hundred dollars as compensation. J.M. said that they had since contacted him twice, on May 7 and earlier on May 8, to ask if the package had arrived. Det. Spencer asked if J.M. was willing to call Conant and tell her the package had been delivered, and J.M. agreed to do so.

---

[1] The facts set forth are taken from the testimony adduced at the suppression hearing, see Transcript (doc. 89).

2

J.M. then called Conant and told her the package had been delivered. Conant replied that she and D were dropping off his dry cleaning but would then drive to Seneca to pick up the package. The officers and J.M. waited in the living room for approximately one hour, at which time a white Mercedes vehicle that resembled a van approached 1624 Shawnee and parked in the driveway. No other vehicles had approached the residence during the one-hour waiting period. J.M. saw the white Mercedes through the window and told Det. Spencer "that's them" and that the vehicle was the same one that D was driving on May 6.

Conant then exited the vehicle and walked to the front door, which Det. Spencer opened and detained her. Conant had $100 in her hand. Other officers contacted D in the vehicle and detained him. D was holding $100 in his hand. At this point, Det. Spencer saw D and recognized him as Johnny Taylor, Defendant in this action. Det. Spencer knew Taylor went by the aliases of Delahunt and D and was involved with a drug distribution ring in Joplin. Conant and Defendant were then transported to the Newton County Jail for questioning and booking. Defendant was advised of his *Miranda* rights, waived them orally and in writing, and made several statements to officers. Based on his 15 years of experience, Det. Spencer testified that drug dealers do not customarily send packages containing drugs in their name or to their personal residence. Det. Spencer also believed that J.M. did not know what was in the package, because he thought J.M. was "kind of a simpleton."

### III. Conclusions of Law

Defendant moves to suppress "all statements and evidence obtained by the government pursuant to the warrantless seizure of [Defendant] conducted by [law enforcement officers] on May 8, 2017." (Doc. 72 at 1.) The specific basis for suppression, according to Defendant, is that:

> the warrantless seizure and arrest of [Defendant] was without probable cause, and
> no exception exists that could justify the warrantless seizure of [Defendant].

3

> Therefore, the seizure violated [Defendant]'s rights under the Fourth [and Fourteenth] Amendment[s] of the United States Constitution, and any evidence obtained, including any statements made by [Defendant], should be suppressed as fruits of the poisonous tree.

(Doc. 72 at 1; doc. 90 at 1.) During the hearing, defense counsel further clarified that the motion does not challenge whether or not Defendant's post-arrest statement was voluntary, nor does it raise any *Miranda* issues. (Doc. 89 at 16.)

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. *See* U.S. Const. amend. IV; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005). Generally, evidence found as a result of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011). Defendant argues the officers lacked probable cause to seize him. Contrary to Defendant's contention, however, the evidence shows the officers had sufficient probable cause to arrest Defendant.

### A. Probable cause to seize/arrest

"Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime." *United States v. Velazquez-Rivera*, 366 F.3d 661, 664 (8th Cir. 2004) (citation omitted). "Probable cause only requires 'a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Payne*, 119 F.3d 637, 643 (8th Cir. 1997) (*quoting Illinois v. Gates*, 462 U.S. 213, 243-44 n.13 (1983)). An officer is not required to conduct a trial before making an arrest. *Morrison v. United States*, 491 F.2d 344, 346 (8th Cir. 1974). Rather, probable cause "is to be determined upon the objective facts available to the arresting officer at the time of the arrest." *Id*.

"Where a previously unknown informant provides information, the informant's lack of a track record requires 'some independent verification' to establish the reliability of the information." *United States v. Brown*, 49 F.3d 1346, 1349 (8th Cir. 1995) (internal citation and quotation omitted). "Independent verification occurs when the information (or aspects of it) is corroborated by the independent observations of police officers." *Id*.

In this matter, J.M., who was previously unknown to the officers, accepted delivery of the package containing methamphetamine. He stated the package belonged to his sister, Jennifer Conant. Upon questioning, J.M. told the officers that, two days earlier, Conant and her boyfriend told him they were going to have a package delivered to his residence and that J.M. would receive a couple hundred dollars as compensation. J.M. referred to his sister's boyfriend as "D" and described him as a large black male driving a white van. J.M. then phoned Conant, with officers listening, and told her the package had arrived, to which she replied that she and D would come pick it up. Approximately one hour later, a white Mercedes vehicle pulled into the residence's driveway. J.M. saw the vehicle through the window and confirmed it was his sister and D and that they were in the same vehicle driven by D two days earlier. This was the only vehicle that had approached the residence during the 1-hour waiting period. Conant then exited the vehicle and approached the front door, holding $100 in her hand. Officers detained the driver of the vehicle, a large black male, who was also holding $100 in his hand. At this point, Det. Spencer recognized the driver as Johnny Taylor, Defendant, whom he knew used the alias of D and was involved with a drug distribution ring in Joplin.

Based on this information, the undersigned finds that the officers reasonably believed that Defendant was attempting to possess methamphetamine with the intent to distribute it. The basis for Defendant's arrest is similar to that in *United States v. Taylor*, 106 F.3d 801 (8th Cir. 1997).

5

In *Taylor*, Omaha police arrested a drug dealer who agreed to provide information. *Id*. at 802. "The newly acquired informant knew his source of methamphetamine only as 'Steve,' but provided police with 'Steve's' telephone number, address, and a description of his vehicle." *Id*. Under the officers' supervision, the informant called "Steve" and arranged for delivery of methamphetamine to a motel room. *Id*. "The informant warned that 'Steve' was 'famous for being late' but that he always arrived with drugs as promised." *Id*. "Steve" promised he was on his way, and one hour later the defendant arrived at the motel room, where he was arrested, searched, and found to be carrying an ounce and a half of methamphetamine, a scale, a loaded handgun, and a set of nunchakus. *Id*.

The defendant in *Taylor* moved to suppress all evidence obtained at his arrest, arguing "his mere presence in a location known to be the site of criminal activity was insufficient to establish probable cause for his arrest." *Id*. at 803. The appellate court disagreed, finding he was arrested based on information provided by a previously unknown informant, which was independently verified as reliable and supported the officers' belief that the defendant "was committing or had committed an offense involving drug trafficking." *Id*.

As in *Taylor*, Defendant argues that the officers arrested him merely because he "happened to be present at the location being searched." This is inaccurate, as the officers were told by J.M. that: (1) the package was for Conant and "D"; (2) Conant and "D" met with J.M. two days earlier to arrange delivery of the package; (3) Conant and "D" told J.M. they would pay him $200 for accepting delivery; (4) "D" was a large black male who drove a white van. Notably, Det. Spencer believed this information was reliable because he viewed J.M. as "kind of a simpleton" who was not even aware the package contained methamphetamine.

6

This information was corroborated by subsequent independent observations of the officers at the scene. Specifically, Det. Spencer listened as Conant told J.M. over the phone that she and "D" would come get the package. An hour later, a white Mercedes pulled into J.M.'s driveway. According to Det. Spencer this vehicle resembled a van, was driven by a large black male, and was the only vehicle to approach J.M.'s residence during this time period. Conant exited the vehicle and went to the front door with $100 in her hand. Officers approached the vehicle and saw that the driver was also holding $100. Together, Conant and the driver were holding $200 in their hands, the exact amount J.M. said he was promised. At this point, Det. Spencer recognized the driver from prior encounters as someone involved in the drug trade in Joplin who went by the alias of "D." In summary, Defendant was not arrested merely because he was at J.M.'s residence, but because of the information provided by J.M. and corroborated by the officers' independent observations.

Additionally, Defendant posits that Det. Spencer could have believed that Defendant was holding $100 because he, like J.M., was hired by Conant to perform a service, to drive her to the residence, and the $100 was his payment. However, the officers were not required to conduct a trial at the time of the arrest, and the possibility of an alternate conclusion does not undermine the officers' reasonable belief that, under the facts set forth above, Defendant was committing or attempting to commit a crime.

Accordingly, based on all of the information available, which was corroborated by independent observations and was therefore trustworthy, it was reasonable for the officers to believe that Defendant was attempting to possess methamphetamine with the intent to distribute. As a result, the undersigned concludes that there was probable cause for his arrest.

### B. Fruit of the poisonous tree

Defendant also asserts that as a direct result of an unreasonable seizure and arrest in violation of the Fourth Amendment, any evidence obtained should be suppressed as fruit of the poisonous tree. Under the fruit of the poisonous tree doctrine, the exclusionary rule bars the admission of evidence obtained directly or indirectly through the exploitation of police illegality. *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). As discussed, the seizure and arrest of Defendant were supported by probable cause and were therefore lawful. Thus, Defendant's fruit of the poisonous tree contention fails.

### IV. Recommendation

As set forth above, it is **RECOMMENDED** that the Motion to Suppress be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: November 1, 2019